IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATHAN WAYNE GALLOWAY,                                Case No. 2:18-cv-00923-SI

                          Plaintiff,                                   **OPINION AND ORDER**

             v.

GARTH GULICK *et al.*,

                          Defendants.

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Nathan Wayne Galloway ("Galloway") filed a motion for enforcement of his

August 2021 settlement agreement ("Settlement Agreement") with Defendants Garth Gulick,

Ashley Clements, and the State of Oregon (together, "Defendants"). (ECF Nos. 67, 82.) The

Settlement Agreement provided that "[i]n the event the Parties are unable to resolve any disputes

concerning this agreement, [Galloway] may present to Judge [Stacie F.] Beckerman evidence

that [the Oregon Department of Corrections ('ODOC')] is not substantially complying with the

terms of this agreement." (Settlement Agreement at 3, ECF No. 50, Ex. 1.) The Settlement

Agreement further provided that "[i]n the event that Judge Beckerman finds that defendants have

not substantially complied with the terms of the agreement, then Judge Beckerman shall have the

authority to order ODOC to remedy the breach." (*Id.* at 3-4.) After the parties briefed Galloway's motion to enforce the settlement agreement, the Court held a hearing on the motion. (*See* ECF No. 84.)

Based on the parties' evidence and argument, the Court finds as follows:

1.    **Replacement of Galloway's Medical Equipment**. In the Settlement Agreement, Defendants agreed to "replace, as needed, medically necessary durable medical equipment in connection with this case." (Settlement Agreement at 2.) Galloway alleges, and Defendants do not dispute, that Galloway's artificial foot orthotic ("AFO") is medically necessary durable medical equipment in connection with this case, ODOC personnel removed the Velcro strap from Galloway's AFO, ODOC will not allow him to order the type of shoe that will accommodate his AFO, and Galloway's AFO is overdue for repair and maintenance. (Pl.'s Mot. at 5-6, ECF No. 67; Defs.' Resp. at 10-11, ECF No. 75; Pl.'s Reply at 9-11, ECF No. 82.) Galloway also asserts that he requires two Velcro straps for his primary AFO and a second AFO to use when his primary AFO is sent out of the institution for repair and maintenance (Pl.'s Mot. at 6), and he reported at the hearing that ODOC staff damaged his secondary AFO by tearing off its Velcro straps.

In light of these largely uncontroverted facts, the Court finds that Defendants have not substantially complied with the terms of the Settlement Agreement requiring them to replace, as needed, Galloway's medically necessary durable medical equipment. Accordingly, the Court orders Defendants to: (1) order two Velcro straps designed for Galloway's AFO; (2) approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO; (3) arrange for the repair and maintenance of Galloway's primary AFO; and (4) provide a second AFO for Galloway to use when his primary AFO is serviced.

PAGE 2 – OPINION AND ORDER

2. **Physical Therapy Equipment**. The Settlement Agreement provided that "ODOC will provide Plaintiff with a physical therapy consultation and continue physical therapy sessions for as long as the physical therapist recommends treatment" and "will request the physical therapist to provide a written treatment plan and provide adequate facilities and equipment to comply with the treatment plan to the extent possible within a correctional environment." (Settlement Agreement at 2.) Galloway alleges, and Defendants do not dispute, that ODOC provided Galloway with physical therapy sessions that ended with recommendations for a "home" exercise plan requiring the use of resistance bands. (Pl.'s Mot. at 2-3; Defs.' Resp. at 5-6; Pl.'s Reply at 3-4.) Although ODOC initially allowed Galloway to use resistance bands to comply with his physical therapy treatment plan, security staff seized the bands from Galloway and a nurse refused to reissue the bands for Galloway either for use in his own cell or in an alternative location. (Pl.'s Mot. at 2-3.) Defendants do not dispute Galloway's assertion that security staff seized the resistance bands only because the medical staff failed properly to document their issuance of the resistance bands to Galloway. (Pl.'s Reply at 4.)

In light of these undisputed facts, the Court finds that Defendants have not substantially complied with the terms of the Settlement Agreement requiring them to provide adequate facilities and equipment for Galloway's physical therapy. Accordingly, the Court orders ODOC to make resistance bands available to Galloway in a manner consistent with the correctional environment.

3. **Chronic Pain Treatment**. The Settlement Agreement provided that "ODOC will provide Plaintiff with a consultation at the Oregon Health and Sciences University (OHSU) pain clinic for evaluation of chronic pain" and "will implement all medically reasonable recommendations received by outside experts that are based on evidence-based clinical data,

current professional knowledge and experience." (Settlement Agreement at 2-3.) It is undisputed that OHSU's Dr. William Yates recommended a five-pronged treatment plan, to include acupuncture, epidural steroid injections (ESIs), pain psychology, physical therapy, and medication (Gabapentin). (Pl.'s Mot. at 3-4; Defs.' Resp. at 6-10; Pl.'s Reply at 4-9.)

Defendants assert that Dr. Yates recommended a range of options which ODOC may consider, but did not recommend that ODOC implement all of the pain relief measures simultaneously. (Defs.' Resp. at 7.) Defendants determined that it was medically appropriate to attempt one treatment at a time to treat Galloway's chronic pain, so that they could evaluate which method was effective. (*Id.*)

Consistent with that approach, Galloway received an ESI on March 1, 2022, and he reported a 60% reduction in pain relief for three weeks. (*Id.*) After a follow-up appointment, OSHU recommended quarterly ESI treatments and Gabapentin. (*Id.*) Galloway's primary care physician at ODOC was concerned that Galloway should not take Gabapentin because he was refusing to take his diabetes and thyroid medications which could lead to side effects. (*Id.* at 7-8.) Galloway also refused to take Gabapentin in the prescribed dosage and form, and insisted on only the "full" OHSU treatment plan. (*Id.*)

Based on the record before the Court, the Court finds that Defendants have made a good faith effort to comply with the Settlement Agreement, but their efforts have been frustrated in part by Galloway's unwillingness to take medications as prescribed. The Court finds that it was not an unreasonable approach for ODOC to try one of the recommended pain treatment methods at a time, at least up until OHSU prescribed the use of both ESIs and Gabapentin together. If Galloway is compliant with his prescribed diabetes and thyroid medications and with ODOC's prescribed dosage and titration of Gabapentin, it appears there is no reason why Galloway cannot

receive quarterly ESIs while also taking Gabapentin as prescribed. The Court urges the parties to work together collaboratively to implement OHSU's chronic pain treatment plan.

       4.    **Behavioral Health Services ("BHS")**. The Settlement Agreement provided that "ODOC will refer Plaintiff to its internal [BHS] for evaluation and treatment options for any mental health conditions." (Settlement Agreement at 2.) Galloway alleges that Defendants provided false and misleading information about him to his BHS provider, "poisoning" the treatment relationship. (Pl.'s Mot. at 6-7.) He asks the Court to order Defendants to send him to a pain psychologist at OHSU and follow the psychologist's treatment plan. (*Id.* at 7.) Defendants respond that ODOC provided Galloway with cognitive behavioral therapy, but that Galloway refused to participate. (Defs.' Resp. at 10.) Galloway explains that he fully participated with individual treatment sessions with his provider, but refused to participate in group therapy sessions led by other adults in custody. (Pl.'s Reply at 9.)

       The Court finds that Defendants substantially complied with the Settlement Agreement by referring Galloway to BHS for evaluation and treatment. (Settlement Agreement at 2.) Defendants report that Galloway may reengage with available BHS services, and the Court encourages him to do so.

       5.    **Damages and Independent Monitor**. The Court denies Galloway's request for compensatory damages and attorney's fees, and for the appointment of an independent monitor. (Pl.'s Mot. at 8.) The Settlement Agreement provides that if the Court finds that Defendants have not substantially complied with its terms, the Court shall have authority to order ODOC to remedy the breach, but it is only "[i]n the event that defendants willfully decline to remedy any alleged breach, and [the Court] finds that no other remedies are effective" that the Court "shall have the authority to impose remedial or punitive sanctions on ODOC." (Settlement Agreement

at 4.) Consistent with the terms of the Settlement Agreement, the Court will provide Defendants

sixty days to remedy the breaches discussed herein.

## CONCLUSION

For the reasons stated, the Court ORDERS Defendants to take the following actions

within sixty days: (1) order two Velcro straps designed for Galloway's AFO; (2) approve

Galloway to self-purchase shoes every six months that will accommodate his AFO; (3) arrange

for the repair and maintenance of Galloway's primary AFO; (4) order a second AFO for

Galloway to use when his primary AFO is serviced; and (5) make resistance bands available to

Galloway for his physical therapy exercises in a manner consistent with the correctional

environment. Defendants shall file a status report with the Court on or before August 14, 2023,

confirming compliance with this order.[1]

**IT IS SO ORDERED.**

DATED this 15th day of June, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[1] The parties agreed in the Settlement Agreement that "Judge Beckerman's written order shall be the final resolution of any dispute submitted in accordance with this agreement" and "waive[d] any rights of appeal or . . . other judicial review[.]" (Settlement Agreement at 4.)