IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NATHAN WAYNE GALLOWAY, | Case No. 2:18-cv-00923-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| GARTH GULICK *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Nathan Wayne Galloway ("Galloway"), a self-represented plaintiff, filed a Notice of Defendants' Willful Noncompliance with Settlement Agreement and Motion for Sanctions on August 14, 2023. (Pl.'s Mot. Sanctions, ECF No. 87.) After the parties briefed Galloway's motion, the Court held a hearing on the motion on November 21, 2023. (ECF No. 102.) Galloway filed a supplement on December 7, 2023 and a corrected supplement on December 15, 2023. (Pl.'s Supp., ECF No. 103; Pl.'s Corr. Supp., ECF No. 104.) For the reasons explained herein, the Court grants in part Galloway's motion for sanctions.

///

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND

An August 2021 Settlement Agreement between Galloway and Defendants Garth Gulick, Ashley Clements, and the State of Oregon (together, "Defendants") provided that "[i]n the event the Parties are unable to resolve any disputes concerning this agreement, [Galloway] may present to Judge [Stacie F.] Beckerman evidence that [the Oregon Department of Corrections ('ODOC')] is not substantially complying with the terms of this agreement." (Settlement Agreement at 3, ECF No. 50, Ex. 1.) The Settlement Agreement further provided that "[i]n the event that Judge Beckerman finds that [D]efendants have not substantially complied with the terms of the agreement, then Judge Beckerman shall have the authority to order ODOC to remedy the breach." (*Id.* at 3-4.)

Galloway filed a motion to enforce the Settlement Agreement on February 9, 2023, alleging several violations. (Pl.'s Mot. Enf., ECF No. 67.) Following briefing on the motion and a hearing, the Court found in an order dated June 15, 2023, that ODOC had not substantially complied with two terms of the Settlement Agreement: (1) the requirement to replace, as needed, Galloway's medically necessary durable medical equipment and (2) the requirement to provide adequate equipment for Galloway's physical therapy. (Op. & Order at 2-3, ECF No. 85.) The Court also found that ODOC had made a good faith effort to implement the chronic pain management plan developed for Galloway by Oregon Health and Science University ("OHSU"), as required by the Settlement Agreement, but ODOC's efforts were frustrated in part by Galloway's unwillingness to take medication as prescribed. (*Id.* at 3-5.) The Court urged the parties to work together collaboratively to implement OHSU's chronic pain management plan. (*Id.* at 5.) Finally, the Court found that ODOC had substantially complied with the Settlement Agreement's behavioral health term by referring Galloway to Behavioral Health Services for

PAGE 2 – OPINION AND ORDER

evaluation and treatment. (*Id.*) The Court denied Galloway's request for compensatory damages and attorney's fees, and for the appointment of an independent monitor. (*Id.* at 5-6.)

The Settlement Agreement provided that if the Court finds that ODOC has not substantially complied with its terms, the Court shall have authority to order ODOC to remedy the breach, but it is only "[i]n the event that defendants willfully decline to remedy any alleged breach, and [the Court] finds that no other remedies are effective" that the Court "shall have the authority to impose remedial or punitive sanctions on ODOC." (Settlement Agreement at 4.) Consistent with the terms of the Settlement Agreement and to remedy ODOC's substantial noncompliance with the Settlement Agreement, the Court ordered ODOC to take the following actions within sixty days:

(1) order two Velcro straps designed for Galloway's [ankle foot orthotic ("AFO")];

(2) approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO;

(3) arrange for the repair and maintenance of Galloway's primary AFO;

(4) provide a second AFO for Galloway to use when his primary AFO is serviced; and

(5) make resistance bands available to Galloway in a manner consistent with the correctional environment.

(Op. & Order at 6.) The Court ordered Defendants to file a status report by August 14, 2023, confirming ODOC's compliance with the Court's order. (*Id.*)

On August 14, 2023, Defendants filed a status report. (Defs.' Memo, ECF No. 86.) With respect to the Court's order regarding Galloway's AFO, ODOC reported that it had largely

PAGE 3 – OPINION AND ORDER

ignored the Court's order, and instead referred Galloway to Summit Orthotics ("Summit") to provide advice on determining the medical necessity of Galloway's existing AFO:

> "a.  Determine if patient would benefit from AFO vs. soft (dynamic) AFO for functional foot drop;
>
> b.  Repair/maintenance of primary AFO if determined medically necessary vs. soft AFO;
>
> c.  2 replacement straps that are appropriate for AFO if determined medically necessary vs. soft AFO;
>
> d.  provide recommendations on footwear that will properly fit AFO if soft AFO ruled out;
>
> e.  Provide recommendation on an AFO to use as a back-up to primary AFO if current AFO is determined medically necessary."

(*Id.* at 2.) Following Galloway's visit, Summit recommended a softer dynamic AFO, which ODOC approved for purchase. (*Id.*) In the interim, ODOC asserted that it had provided replacement straps for Galloway's current AFO and performed repair and maintenance on it. (*Id.* at 2-3.) ODOC did not authorize the purchase of orthotic shoes, based on its conclusion that Galloway's current shoes would work with a dynamic AFO. (*Id.* at 3.) With respect to Galloway's physical therapy equipment, Defendants reported that ODOC timely ordered resistance bands, but they were back ordered. (*Id.*) ODOC requested bands from another source. (*Id.*)

Also on August 14, 2023, Galloway filed a Notice of Defendants' Willful Noncompliance with Settlement Agreement and Motion for Sanctions, reporting largely the same developments regarding ODOC's failure to comply with the Court's order:

PAGE 4 – OPINION AND ORDER

- ODOC avoided the Court's orders by ordering Galloway a dynamic AFO instead of accommodating his existing AFO.

- Galloway met with Dr. Karen Harris, DO, on July 12, 2023, and Dr. Harris advised Galloway he would receive only one Velcro strap because his current Velcro strap was working fine.

- Summit repaired his primary AFO and provided one Velcro strap.

- At the time of filing, Galloway had not received the resistance bands.

(Pl.'s Mot. Sanctions at 2-8.) Galloway requested that the Court order the remedial and punitive sanctions outlined in his original motion to enforce the settlement agreement.[1] (*Id.* at 14.) In the original motion, Galloway requested $552,000 in compensatory damages (four times the original Settlement Agreement award of $138,000) and reimbursement of the $55,200 portion of the settlement award that was paid to Galloway's prior counsel. (Pl.'s Mot. Enf. at 8.)

In the reply to his motion for sanctions, Galloway informed the Court that ODOC's Therapeutic Level of Care ("TLC") Committee determined in October 2023 that Galloway may keep his primary AFO (instead of switching to the dynamic AFO), and that he had returned again to Summit and received a second AFO to use as a backup to his primary AFO. (Pl.'s Reply at 3-4.) Galloway still had not received the second Velcro strap. (*Id.* at 4.)

The Court held a hearing on Galloway's motion for sanctions on November 21, 2023. (ECF No. 102.) At the hearing, Galloway and ODOC's counsel confirmed that Galloway had not yet received the second Velcro strap for his AFO and ODOC had not yet authorized Galloway to

---

[1] Galloway also filed a motion asking the Court to compel the attendance of four ODOC witnesses at the hearing on his motion for sanctions, but later withdrew that request in response to alleged retaliation by ODOC officials. (*See* Pl.'s Req., ECF No. 96; Pl.'s Reply, ECF No. 101.)

PAGE 5 – OPINION AND ORDER

self-purchase shoes that will accommodate his primary AFO. Galloway also confirmed that he has now received the second AFO, albeit an inexpensive version not custom designed like his primary AFO, and that his primary AFO now has one proper Velcro strap and is in full operational order. Galloway also confirmed that he finally received the resistance bands sixty-one days after the Court's order. ODOC's counsel confirmed that the TLC has approved Galloway to visit OHSU for an epidural steroid injection ("ESI"), which was part of OHSU's chronic pain management plan.

With respect to ODOC's failure to authorize Galloway to self-purchase shoes to accommodate his AFO, as the Court had ordered and then provided ODOC sixty days to comply, ODOC's counsel explained that the initial delay appears to be the result of ODOC's request that Summit evaluate Galloway for a dynamic AFO that does not require special shoes, followed by RN C. Coffey's ("RN Coffey") unsuccessful attempt to enter the authorization into the system, followed by a disconnect between ODOC's medical and security units regarding the authorization. During the hearing, ODOC's counsel was able to contact RN Coffey and confirm that Galloway is now authorized to self-purchase orthotic shoes.

Galloway filed a supplement on December 7, 2023, informing the Court that he still had not received the second Velcro strap as of December 4, 2023, but that ODOC officials informed him that he is now authorized to self-purchase orthotic shoes (albeit only for one year). (Pl.'s Supp. at 2.) Galloway filed a corrected supplement correcting the calculations in the original supplement. (Pl.'s Corr. Supp. at 1.) Galloway reports continued dissatisfaction with his secondary (non-custom) AFO, especially because it requires the use of a cane and RN Coffey removed Galloway's authorization to use a cane as medically unnecessary. (*Id.* at 3.) Galloway also continues to object to ODOC's medication crush order, arguing that there is no basis for the

order. (*Id.* at 3-4.) In his corrected supplement, Galloway asks for sanctions in the amount of $147,195, representing the documented cost of medical care ODOC has failed to provide Galloway since entering into the Settlement Agreement ($91,995) and the amount of attorney's fees paid to Galloway's prior counsel ($55,200). (*Id.* at 4-5.) Galloway also requested liquidated damages for any future non-compliance, beginning with the doubling of the damages award with each act of non-compliance until Galloway releases from ODOC custody. (*Id.* at 5.)

## DISCUSSION

In light of the record summarized above, the Court finds that ODOC did not timely remedy the material breaches of the Settlement Agreement identified in the Court's June 15, 2023, order.

First, the Court ordered ODOC to "order two Velcro straps designed for Galloway's AFO." (Op. & Order at 6.) The Court based its order on evidence presented at the May 18, 2023, hearing, at which Galloway testified that the AFO-designed strap was necessary for him to use his medically necessary AFO because it includes padding that wicks away moisture, and that he requires a second strap to use while he cleans and dries the primary Velcro strap. Galloway testified that ODOC had previously approved him to purchase Velcro straps for his AFO and he had purchased eight Velcro straps, ODOC later removed several items from the list of approved medical items in his AS400, including Velcro straps. Galloway testified that RN Coffey told him that she did not understand why he needed the straps and the straps are unauthorized, and therefore she removed the straps from his AFO, confiscated the straps, and replaced them by removing a strap from a medical boot and affixing the non-conforming strap to his AFO.

ODOC's response to Galloway's motion and at the hearing was not that the Velcro straps created a security risk, but that the extra strap was not medically necessary. However, it is

PAGE 7 – OPINION AND ORDER

undisputed that Galloway's AFO is medically necessary, that the AFO is constructed to work with a Velcro strap that includes padding to wick away moisture, and that Galloway at times requires a temporary replacement for the primary strap. It is also undisputed that the Court ordered ODOC to provide Galloway with the second Velcro strap, and ODOC had not provided the second Velcro strap to Galloway as of December 4, 2023 (i.e., 173 days later).[2] For these reasons, the Court concludes that ODOC failed timely to remedy its noncompliance with the Court's order.

Second, the Court ordered ODOC to "approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO[.]" (*Id.* at 6.) The Court based its order on evidence presented at the May 18, 2023, hearing, at which Galloway testified that his AFO requires a correct-fitting orthotic shoe that can withstand the pressure of the AFO so that the AFO remains locked into the back part of his shoe. Galloway testified that his mother is willing to order him orthotic shoes that fit his AFO, but he needs approval to receive orthotic shoes while in ODOC custody. Galloway testified that he was previously authorized to receive orthotic shoes, but RN Coffey refused to authorize him to receive the shoes based on her own determination that they are not medically necessary. Based on this evidence, the Court ordered ODOC to approve Galloway to self-purchase orthotic shoes at least every six months that will accommodate his AFO, and the record is undisputed that ODOC failed to do so until the November 21, 2023, hearing (i.e., 160 days later). For these reasons, the Court concludes that ODOC failed timely to remedy its noncompliance with the Court's order.

///

---

[2] The Court assumes that ODOC has now provided Galloway with the second Velcro strap, but invites an update from the parties if the Court is mistaken.

With respect to the other deliverables in the Court's June 15, 2023, order, the Court finds that ODOC remedied its noncompliance. ODOC provided Galloway with one Velcro strap designed for his AFO, arranged for the repair and maintenance of Galloway's primary AFO, provided a second AFO for Galloway to use when his primary AFO is serviced,[3] and made resistance bands available to Galloway in a manner consistent with the correctional environment (despite providing the bands one day later than the sixty-day deadline).

The Court acknowledges and understands Galloway's frustration with ODOC's compliance with the terms of the Settlement Agreement to date, as well as the pain and emotional distress he continues to endure as a result of his medical conditions and ODOC's alleged failures to treat those medical conditions. The Court has no interest in micromanaging Galloway's medical care while he remains in ODOC custody, but did agree to retain jurisdiction to resolve disputes and ensure compliance with the Settlement Agreement. Although the Court does not believe that ODOC's counsel acted willfully with respect to ODOC's failure to remedy its noncompliance with the Court's order, the record supports a conclusion that the relevant ODOC medical personnel willfully declined to remedy the two alleged breaches discussed above. It may be that medical personnel is frustrated with Galloway and his ongoing medical needs, or with the Court's involvement in these matters, but the Court's order could not have been clearer.[4]

---

[3] Although Galloway is unsatisfied with the quality of the secondary AFO, the Court confirmed with him at the hearing that he will be required to use the secondary AFO only while the primary AFO is being repaired. The Court further notes that Summit was able to repair Galloway's primary AFO during his last visit, such that he may be able to avoid the use of the secondary AFO for any extended period of time in the future if same-day repairs and maintenance are possible.

[4] If ODOC disagreed with the medical necessity of Galloway's existing AFO, its extra Velcro strap, or the required orthotic shoes, it could (and should) have requested a further

PAGE 9 – OPINION AND ORDER

The Settlement Agreement provides that the Court has authority to impose remedial or punitive sanctions if ODOC willfully declines to remedy any alleged breach. In determining the appropriate amount of sanctions, the Court considers the following factors: (1) ODOC paid Galloway $138,000 in damages in connection with the Settlement Agreement (to include attorney's fees and costs), to resolve Galloway's claims that ODOC failed to provide adequate medical care to Galloway from 2006 through the 2021 settlement date (i.e., for many years); (2) ODOC substantially complied with many terms of the Settlement Agreement, including by arranging for urology, physical therapy, chronic pain, and behavioral health evaluations; (3) ODOC timely remedied some of the breaches the Court identified in its June 15, 2023, order, by replacing one Velcro strap for Galloway's AFO, arranging for its repair and maintenance, and ordering resistance bands; (4) providing medical care in a custodial environment is complicated by many factors not present in non-custodial settings; and (5) the individuals who failed to comply with the Court's order are typically not responsible for payment of court-ordered sanctions.

Balancing ODOC's failure to remedy its breaches in a timely manner, these additional factors, and the Court's interest in deterring further violations of the Settlement Agreement, the Court imposes remedial and punitive sanctions in the amount of $5,000.00, payable to Galloway within thirty days.[5]

///

---

evidentiary hearing or sought relief from the Court's order rather than simply ignoring aspects of the Court's order.

[5] The parties agreed in the Settlement Agreement that "Judge Beckerman's written order shall be the final resolution of any dispute submitted in accordance with this agreement" and "waive[d] any rights of appeal or . . . other judicial review[.]" (Settlement Agreement at 4.)

PAGE 10 – OPINION AND ORDER

To provide guidance to the parties moving forward, the Court notes that ODOC has now satisfied many terms of the Settlement Agreement, but that two terms are continuing obligations while Galloway remains in ODOC custody: (1) "ODOC will implement all medically reasonable recommendations received by outside experts that are based on evidence-based clinical data, current professional knowledge and experience" in connection with the medical conditions at issue in the Settlement Agreement; and (2) ODOC "will replace, as needed, medically necessary durable medical equipment in connection with this case." (Settlement Agreement at 2.)

Consistent with this Court's June 15, 2023 order, the Court expects that ODOC will continue to provide Galloway with: routine maintenance and repair of his primary custom AFO; a secondary AFO for Galloway to use while his primary AFO is serviced; two Velcro straps designed for Galloway's AFO; approval to self-purchase orthotic shoes at least every six months that will accommodate his AFO; and resistance bands. If Galloway believes that ODOC is not substantially complying with these terms, he must first attempt to resolve any disputes informally with ODOC medical personnel, and he may file a motion for enforcement if unable to resolve the dispute. (*Id.* at 3.) If ODOC wishes to seek relief from any of these terms of the Court's order (e.g., if an outside provider determines that a different type of AFO is more appropriate for Galloway's current condition or if any security issues prevent ODOC from complying with the Court's order), it may seek relief from the order by filing a motion for relief.

With respect to ODOC's compliance with OSHU's chronic pain treatment plan for Galloway, the Court has noted that it is unwilling to interfere with ODOC's execution of OHSU's chronic pain management recommendations, to the extent Galloway has challenged ODOC's position that Galloway's Gabapentin must be crushed and titrated and ODOC's sequencing of the treatment plan. The Court encourages Galloway to follow ODOC's medical

PAGE 11 – OPINION AND ORDER

guidance with respect to dosage, titration, and sequencing, even if he disagrees with the efficacy of the advice, so that he may receive the benefits of OHSU's recommendations to treat his chronic pain.

Finally, in an effort to avoid further disputes, the Court orders ODOC's counsel to (1) speak directly with RN Coffey and any other relevant medical personnel, to confirm their understanding of the Settlement Agreement terms and the Court's orders; (2) to confirm that the AS400 authorization is clear that Galloway may self purchase and receive orthotic shoes every six months until he is released (or ensure that there is a process in place to review the authorization at the conclusion of the one-year authorization, rather than allow it to expire); and (3) work with Galloway and RN Coffey to determine if Galloway's cane is medically necessary, at least when he is required to use the secondary AFO. ODOC shall file a status report within thirty days to confirm it has taken these steps.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART Galloway's motion for sanctions (ECF No. 87), and ORDERS ODOC to pay Galloway the sum of Five Thousand Dollars ($5,000.00), and file a status report confirming the payment and the steps outlined above, by January 18, 2024.

**IT IS SO ORDERED.**

DATED this 18th day of December, 2023.

								 _____
								 HON. STACIE F. BECKERMAN
								 United States Magistrate Judge