IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATHAN WAYNE GALLOWAY,                              Case No. 2:18-cv-00923-SB

                Plaintiff,                              **OPINION AND ORDER**

      v.

GARTH GULICK *et al.*,

                Defendants.

---

**BECKERMAN, U.S. Magistrate Judge.**

        Plaintiff Nathan Wayne Galloway ("Galloway"), a self-represented plaintiff, filed an amended motion for further sanctions on July 22, 2024. (Pl.'s Mot. Sanctions, ECF No. 114.) Defendants Garth Gulick, Ashley Clements, and the State of Oregon (referred to herein as the Oregon Department of Corrections ("ODOC")) responded and filed a cross-motion to terminate enforcement of ODOC's settlement agreement with Galloway. (Defs.' Resp. & Mot. Terminate, ECF No. 125.) After the parties briefed the motions, the Court held an evidentiary hearing on December 17, 2024. (ECF No. 137.) For the reasons explained below, the Court grants in part Galloway's amended motion for further sanctions and denies ODOC's cross-motion to terminate enforcement of the settlement agreement.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

An August 2021 settlement agreement between Galloway and ODOC (the "Settlement Agreement") provides that "[i]n the event the Parties are unable to resolve any disputes concerning this agreement, [Galloway] may present to Judge [Stacie F.] Beckerman evidence that [ODOC] is not substantially complying with the terms of this agreement." (Settlement Agreement at 3, ECF No. 50, Ex. 1.) The Settlement Agreement further provides that "[i]n the event that Judge Beckerman finds that [D]efendants have not substantially complied with the terms of the agreement, then Judge Beckerman shall have the authority to order ODOC to remedy the breach." (*Id.* at 3-4.) "In the event that defendants willfully decline to remedy any alleged breach, and [the Court] finds that no other remedies are effective[,]" the Court "shall have the authority to impose remedial or punitive sanctions on ODOC." (*Id.* at 4.)

Galloway filed his first motion to enforce the Settlement Agreement on February 9, 2023, alleging several violations. (Pl.'s Mot. Enf., ECF No. 67.) Following briefing on the motion and a hearing, the Court found in an order dated June 15, 2023, that ODOC had not substantially complied with two terms of the Settlement Agreement: (1) the requirement to replace, as needed, Galloway's medically necessary durable medical equipment and (2) the requirement to provide adequate equipment for Galloway's physical therapy. (Op. & Order at 2-3, ECF No. 85.) The Court also found that ODOC had made a good faith effort to implement the chronic pain management plan developed for Galloway by Oregon Health and Science University ("OHSU"), as required by the Settlement Agreement, but ODOC's efforts were frustrated in part by Galloway's unwillingness to take medication as prescribed. (*Id.* at 3-5.) The Court urged the parties to work together collaboratively to implement OHSU's chronic pain management plan. (*Id.* at 5.) Finally, the Court found that ODOC had substantially complied with the Settlement

Agreement's behavioral health term by referring Galloway to Behavioral Health Services for evaluation and treatment. (*Id.*) The Court denied Galloway's request for compensatory damages and attorney's fees, and for the appointment of an independent monitor. (*Id.* at 5-6.)

In its Order, and consistent with the terms of the Settlement Agreement, the Court ordered ODOC to take the following actions within sixty days to remedy the breaches:

(1)    order two Velcro straps designed for Galloway's [ankle foot orthotic ("AFO")];

(2)    approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO;

(3)    arrange for the repair and maintenance of Galloway's primary AFO;

(4)    provide a second AFO for Galloway to use when his primary AFO is serviced; and

(5)    make resistance bands available to Galloway in a manner consistent with the correctional environment.

(*Id.* at 6.) The Court ordered ODOC to file a status report by August 14, 2023, confirming ODOC's compliance with the Court's order. (*Id.*)

On August 14, 2023, ODOC filed its status report. (Defs.' Memo, ECF No. 86.) With respect to the Court's order regarding Galloway's AFO, ODOC reported that it had not complied with the Court's order, and instead referred Galloway to Summit Orthotics ("Summit") to provide advice on determining the medical necessity of Galloway's existing AFO. (*Id.* at 2.) Following Galloway's visit, Summit recommended a softer dynamic AFO, which ODOC approved for purchase. (*Id.*) In the interim, ODOC asserted that it had provided replacement straps for Galloway's current AFO and performed repair and maintenance on it. (*Id.* at 2-3.) ODOC did not authorize the purchase of orthotic shoes, based on its conclusion that Galloway's

PAGE 3 – OPINION AND ORDER

current shoes would work with a dynamic AFO. (*Id.* at 3.) With respect to Galloway's physical therapy equipment, ODOC reported that it had timely ordered resistance bands, but they were back ordered, and ODOC had requested bands from another source. (*Id.*)

Also on August 14, 2023, Galloway filed a Notice of Defendants' Willful Noncompliance with Settlement Agreement and Motion for Sanctions, reporting largely the same developments regarding ODOC's failure to comply with the Court's order:

- ODOC avoided the Court's orders by ordering Galloway a dynamic AFO instead of accommodating his existing AFO.

- Galloway met Dr. Karen Harris, DO ("Dr. Harris"), on July 12, 2023, and Dr. Harris advised Galloway he would receive only one Velcro strap because his current Velcro strap was working fine.

- Summit repaired his primary AFO and provided one Velcro strap.

- At the time of filing, Galloway had not received the resistance bands.

(Pl.'s Mot. Sanctions at 2-8, ECF No. 87.) Galloway requested that the Court order the remedial and punitive sanctions outlined in his original motion to enforce the settlement agreement. (*Id.* at 14.) In the original motion, Galloway requested $552,000 in compensatory damages (four times the original Settlement Agreement award of $138,000) and reimbursement of the $55,200 portion of the settlement award that was paid to Galloway's prior counsel. (Pl.'s Mot. Enf. at 8.)

In the reply to his motion for sanctions, Galloway informed the Court that ODOC's Therapeutic Level of Care ("TLC") Committee determined in October 2023 that Galloway may keep his primary AFO (instead of switching to the dynamic AFO), and that he had returned again to Summit and received a second AFO to use as a backup to his primary AFO. (Pl.'s Reply at 3-4, ECF No. 101.) Galloway still had not received the second Velcro strap. (*Id.* at 4.)

The Court held a hearing on Galloway's motion for sanctions on November 21, 2023. (ECF No. 102.) At the hearing, Galloway and ODOC's counsel confirmed that Galloway had not yet received the second Velcro strap for his AFO and ODOC had not yet authorized Galloway to self-purchase shoes that will accommodate his primary AFO. Galloway also confirmed that he had since received the second AFO, albeit an inexpensive version not custom designed like his primary AFO, and that his primary AFO had one proper Velcro strap and was in full operational order. Galloway also confirmed that he finally received the resistance bands sixty-one days after the Court's order. ODOC's counsel confirmed that the TLC Committee had approved Galloway to visit OHSU for an epidural steroid injection ("ESI"), which was part of OHSU's chronic pain management plan.

With respect to ODOC's failure to authorize Galloway to self-purchase shoes to accommodate his AFO, as the Court had ordered and then provided ODOC sixty days to comply, ODOC's counsel explained that the initial delay appeared to be the result of ODOC's request that Summit evaluate Galloway for a dynamic AFO that does not require special shoes, followed by a nurse's unsuccessful attempt to enter the authorization into the system, followed by a disconnect between ODOC's medical and security units regarding the authorization. During the hearing, ODOC's counsel was able to contact a nurse to confirm that Galloway was authorized to self-purchase orthotic shoes.

Galloway filed a supplement on December 7, 2023, informing the Court that he still had not received the second Velcro strap as of December 4, 2023, but that ODOC officials informed him that he is now authorized to self-purchase orthotic shoes (albeit only for one year). (Pl.'s Supp. at 2, ECF No. 103.) Galloway filed a corrected supplement correcting the calculations in the original supplement. (Pl.'s Corr. Supp. at 1, ECF No. 104.) Galloway reported continued

dissatisfaction with his secondary (non-custom) AFO, especially because it requires the use of a cane and a nurse had removed Galloway's authorization to use a cane as medically unnecessary. (*Id.* at 3.) Galloway also continued to object to ODOC's medication crush order, arguing that there is no basis for the order. (*Id.* at 3-4.) In his corrected supplement, Galloway requested sanctions in the amount of $147,195, representing the documented cost of medical care ODOC had failed to provide Galloway since entering into the Settlement Agreement ($91,995) and the amount of attorney's fees paid to Galloway's prior counsel ($55,200). (*Id.* at 4-5.) Galloway also requested liquidated damages for any future non-compliance, beginning with the doubling of the damages award with each act of non-compliance until Galloway releases from ODOC custody in 2027. (*Id.* at 5.)

In a December 18, 2023 opinion, the Court found that ODOC did not timely remedy the material breaches of the Settlement Agreement identified in the Court's June 15, 2023, order. (Op. & Order at 7, ECF No. 105.) Specifically, Defendants failed to order two Velcro straps for Galloway's AFO and did not timely approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO. (*Id.* at 7-8.) The Court imposed remedial and punitive sanctions in the amount of $5,000, payable to Galloway. (*Id.* at 10.)

To provide guidance to the parties moving forward, the Court noted that ODOC had satisfied many terms of the Settlement Agreement, but that two terms are continuing obligations while Galloway remains in ODOC custody: (1) "ODOC will implement all medically reasonable recommendations received by outside experts that are based on evidence-based clinical data, current professional knowledge and experience" in connection with the medical conditions at issue in the Settlement Agreement; and (2) ODOC "will replace, as needed, medically necessary durable medical equipment in connection with this case." (Settlement Agreement at 2.)

The Court instructed that it expects that ODOC will continue to provide Galloway with routine maintenance and repair of his primary custom AFO; a secondary AFO for Galloway to use while his primary AFO is serviced; two Velcro straps designed for Galloway's AFO; approval to self-purchase orthotic shoes at least every six months that will accommodate his AFO; and resistance bands. The Court advised that if Galloway believes that ODOC is not substantially complying with these terms, he must first attempt to resolve any disputes informally with ODOC medical personnel, and he may file a motion for enforcement if unable to resolve the dispute. (*Id.* at 3.) If ODOC wishes to seek relief from any of these terms of the Court's order (e.g., if an outside provider determines that a different type of AFO is more appropriate for Galloway's current condition or if any security issues prevent ODOC from complying with the Court's order), it may seek relief from the order by filing a motion for relief.

With respect to ODOC's compliance with OHSU's chronic pain treatment plan for Galloway, the Court noted that it was unwilling to interfere with ODOC's execution of OHSU's chronic pain management recommendations, to the extent Galloway has challenged ODOC's position that Galloway's Gabapentin must be crushed and titrated and ODOC's sequencing of the treatment plan. The Court encouraged Galloway to follow ODOC's medical guidance with respect to dosage, titration, and sequencing, even if he disagrees with the efficacy of the advice, so that he may receive the benefits of the OHSU recommendations to treat his chronic pain.

Galloway again filed a motion for sanctions for noncompliance with the Settlement Agreement on May 17, 2024 (ECF No. 107), and amended his motion on July 22, 2024. In his July 22, 2024, amended motion for further sanctions, Galloway alleged that Defendants' willful noncompliance with the Settlement Agreement continues. (Pl.'s Mot. Sanctions at 1.) Specifically, Plaintiff alleged that: (i) ODOC's in-house orthotics clinic took possession of

Galloway's AFO to have it fitted by an outside provider, but Dr. Harris ordered that the clinic

return the AFO to Galloway, and Dr. Harris told Galloway that she would not take the issue of

his AFO fit to the TLC Committee because it was a "petty issue" and that he should cut the toe

box out of his shoes to make the AFO fit better and lift his foot higher so that he does not trip;

(ii) Dr. Harris questioned the medical necessity of Galloway's AFO and also opined that

Galloway's request for a cane would "encourag[e] Mr. Galloway to view and project himself as

crippled by a physical disability"; (iii) Dr. Harris interfered with Galloway's scheduled ESI at

OHSU by scheduling him for a consultation instead of treatment, despite counsel's

representation at the December 2023 hearing that the TLC Committee had already approved

Galloway to visit OHSU to receive the ESI, and Dr. Harris then deferred his ESI again in April

2024, citing the ongoing disagreement about crushing Galloway's Gabapentin; and (iv) OHSU

records reflect that OHSU made several attempts to return Galloway to OHSU for continued

treatment but ODOC did not return its calls. (*Id.* at 2-8.)

Galloway also reported that at his OHSU consultation on April 15, 2024, the OHSU

physicians outlined an updated detailed treatment plan, including: (i) Gabapentin 300mg three

times per day; (ii) Tramadol 50mg daily; (iii) weekly acupuncture; (iv) lumbar magnetic

resonance imaging ("MRI") within one month due to urinary retention, motor weakness, and gait

change; (v) an ESI every three months; and (vi) a visit to OHSU neurosurgery urgently because

of new neurologic deficits. (*Id.* at 8.) At the time of Galloway's July 22, 2024, motion, he had

not received any of the recommended medical care. (*Id.*) Instead, Galloway alleged that Dr.

Harris advised him that it was too expensive for ODOC to transport him to OHSU for treatment,

he has learned to live with his pain and therefore ESIs are no longer medically necessary, and she

was not going to have OHSU "dictate to her" how to treat Galloway's chronic pain. (*Id.* at 9-10.)

Galloway also alleged that Dr. Harris refused to order any medication for him, concluded that acupuncture is not "medically indicated," and told him he can wait until his release from custody (i.e., in 2027) to receive treatment. (*Id.* at 10.) Dr. Harris also denied the recommended MRI. (*Id.*) In his motion, Galloway asked the Court to order ODOC to implement OHSU's latest treatment recommendations, and impose meaningful sanctions to deter further violations of the Settlement Agreement. (*Id.* at 9, 13.)

In ODOC's September 5, 2024, response to Galloway's amended motion for sanctions, ODOC reported that the in-house orthotics clinic sent Galloway's AFO to Summit for proper fitting on June 20, 2024, Galloway was never without the use of his primary AFO as he awaited the proper fitting of his secondary AFO, and the AFO issue had resolved. (Defs.' Resp. & Mot. Terminate at 4.) With respect to pain management, ODOC acknowledged that OHSU recommended ESIs every three months, but emphasized that OHSU's references to pain medications are recommendations only for Galloway's primary care provider to consider. (*Id.* at 6.) Dr. Harris, in turn, believes that Tramadol is not indicated for chronic pain and presents greater potential for harm in light of the risks of addiction and dependence, but she is now willing to prescribe Gabapentin for Galloway as recommended in light of new ODOC policies. (*Id.* at 8.) ODOC further reported that the TLC Committee had approved the recommended MRI and neurosurgical consult on May 30, 2024, but denied acupuncture as not medically indicated. (*Id.*) The MRI was completed on August 15, 2024. (*Id.* at 9.)

In its response and cross-motion, ODOC asked the Court to terminate oversight over the Settlement Agreement, because "[i]t is less than ideal to have Plaintiff's care decisions filtered through the lens of the federal courts" and terminating oversight "will not impair [Galloway's]

ability to seek further redress if he believes his future care falls below the Eighth Amendment standard." (*Id.* at 10.)

Galloway filed a reply in support of his motion on October 2, 2024. (Pl.'s Reply 1-9, ECF No. 131.) Galloway further reported that his physical therapist had recommended a higher level of resistance bands (from green to blue), a heating pad, and additional sessions, but Dr. Harris did not follow through with any of the recommendations. (*Id.* at 6.)

Galloway filed a supplemental update on October 15, 2024, reporting that ODOC finally sent him to OHSU to receive an ESI on October 7, 2024. (Pl.'s Supp. Update at 1, ECF No. 133.) He also visited OHSU on October 8, 2024, for a neurosurgical consult, but ODOC failed to send along Galloway's most recent MRI to allow the surgeon to provide the requested consultation. (*Id.* at 1.) The neurosurgeon expressed frustration that ODOC asked for a consultation but had not implemented his recommendations nor the pain clinic's recommendations from prior visits. (*Id.*) The neurosurgeon emphasized that Gabapentin is the appropriate medication to treat Galloway's damaged nerves. (*Id.* at 2.)

At the December 17, 2024, evidentiary hearing conducted by video, Dr. Harris appeared and testified. (ECF No. 137.) Dr. Harris answered questions from ODOC's counsel and Galloway. Of particular note, Dr. Harris (i) testified that the TLC Committee approved Galloway for further ESIs but it took four months to schedule the first visit which is "standard" at ODOC because it considers pain management to be "elective" treatment; (ii) questioned OHSU's recommendations for Galloway because they came from a medical resident who was a "trainee" and "probably quite sleep deprived" and Dr. Harris believed the OHSU resident was "a little bit out of line"; (iii) questioned OHSU's recommendations because the providers there do not "know Mr. Galloway"; (iv) agreed to prescribe Gabapentin to Galloway in the manner OHSU

recommended, in part because it is "not worth the time and the effort and the investment of public servants' time" to address Galloway's concerns about his Gabapentin; (v) questioned Galloway's reports of incontinence because she has never witnessed it; (vi) opined that Galloway's foot drop was partly psychogenic; (vii) complained that "public servants should not be spending this much time on" things like Galloway's AFO, the "time and energy that's gone into" his AFO is "mind boggling," and the timeline of fixing Galloway's AFO is "exhausting"; (ix) stated she would like to resolve whether Galloway's physical therapy exercise bands qualify as durable medical equipment, for which she is responsible for writing orders, so that she does not "have to deal with this again"; (x) acknowledged that she had denied or would deny the physical therapist's heating pad recommendation because a heating paid is a comfort measure (despite the physical therapist's recommendation that heat might reduce Galloway's muscle spasms), not a medical need, and her job is to meet medical needs and not comfort needs; (xi) testified she has never approved a heating pad for any AIC and would need to figure out how to do it; (xii) believes there is nothing a heating pad can do that rest will not do, and sometimes patients use heating pads too often; (xiii) testified that she likes Galloway "just fine" but is frustrated about the amount of time she is asked to spend on his care; (xiv) stated she recalls reading the Settlement Agreement once but does not recall its terms; and (xv) testified that ODOC cannot timely transport AICs to outside medical visits because it is "underfunded" and "understaffed" and there are not "enough people to get people out for trips and to schedule them and organize them" and it is "a big problem" that ODOC does not "have a good mission" to address.

Following the evidentiary hearing, Galloway sent the Court a supplemental request on or about January 14, 2025, copying ODOC's counsel, which the Court received on January 30,

2025. In his supplemental request, Galloway noted that because he received his last ESI in October 2024, he needs to receive the next ESI by the end of February 2025 to stay on track with OHSU's treatment plan.

**DISCUSSION**

In light of the evidentiary record summarized above and for the reasons discussed below, the Court finds that ODOC has not substantially complied with the terms of the Settlement Agreement.

**I.     CHRONIC PAIN TREAMENT**

The Settlement Agreement provided that ODOC "will implement all medically reasonable recommendations received by outside experts that are based on evidence-based clinical data, current professional knowledge and experience." (Settlement Agreement at 2.) The Settlement Agreement defines "medically reasonable recommendations" as "recommendations that a competent doctor could make that are safe and effective, not experimental or investigational, and appropriate in duration and frequency in accordance with the accepted standards of medical practice for the diagnosis or treatment of the patient's condition." (*Id.* at 3.) The Settlement Agreement further provided that "ODOC will not commit to implementing any non-medical recommendations, or recommendations that would impede ODOC's operational or population management abilities." (*Id.*)

At Galloway's most recent consultation in April 2024, the OHSU physicians recommended the following measures to treat Galloway's chronic pain:

- Gabapentin 300mg three times per day;
- Tramadol 50mg daily;
- weekly acupuncture;

- a lumbar MRI within one month due to urinary retention, motor weakness, and gait change;

- an ESI every three months; and

- visit OHSU neurosurgery urgently because of new neurologic deficits.

(Pl.'s Mot. Sanctions at 8; Defs.' Resp. & Cross-Motion Terminate at 6-7.) The Court understands that ODOC has now agreed that Galloway may receive 300mg of Gabapentin three times per day in light of recent changes to ODOC's Gabapentin policy, and the Court finds that ODOC eventually provided Galloway with a lumbar MRI (albeit not within the time frame OHSU recommended), and eventually (albeit not urgently) provided Galloway with a neurosurgical consult. The Court accepts ODOC's representation that it is unable to provide Galloway with weekly acupuncture treatments in a correctional setting. The Court also accepts ODOC's position that providing Galloway with Tramadol, an opiate, presents too high of a risk for addiction and dependence.[1]

With respect to quarterly ESIs, it is undisputed that OHSU has recommended regular ESIs to treat Galloway's chronic pain several times, including in its most recent April 2024 treatment plan. The record reflects that Galloway received an ESI in March 2022, and again in October 2024, and that ESIs have provided him with pain relief. The Court is satisfied that quarterly ESIs are a medically reasonable recommendation from an outside provider based on evidence-based clinical data and current professional knowledge and experience, and that transporting Galloway to OHSU for quarterly ESIs—although inconvenient and perhaps costly—

---

[1] The Court understands that Baclofen, a muscle relaxer, has also provided Galloway with pain relief in the past. OHSU did not recommend Baclofen, and the Court does not have the expertise to determine if Baclofen is an appropriate pain-relieving substitute for Tramadol. The Court notes that Dr. Harris testified she is willing to consider prescribing Baclofen to Galloway, but would not prescribe it concurrently with Gabapentin.

does not impede ODOC's operational or population management abilities. Rather, it appears that ODOC has failed to follow through with OHSU's recommendation due primarily to resource limitations, as well as Dr. Harris's lack of understanding about the Settlement Agreement terms and her reluctance to follow OHSU's recommendations. Even though ODOC represented at the December 2023 hearing on Galloway's prior motion for sanctions that the TLC Committee had already approved ESI treatments for Galloway, ODOC has only transported Galloway to OHSU for an ESI one time in over a year.

For all of these reasons, the Court finds that ODOC has not substantially complied with the Settlement Agreement terms because it has failed to provide Galloway with quarterly ESI treatments at OHSU.

## II.    PHYSICAL THERAPY EQUIPMENT

The Settlement Agreement provided that "ODOC will provide Plaintiff with a physical therapy consultation and continue physical therapy sessions for as long as the physical therapist recommends treatment" and "will request the physical therapist to provide a written treatment plan and provide adequate facilities and equipment to comply with the treatment plan to the extent possible within a correctional environment." (Settlement Agreement at 2.) It is undisputed that ODOC provided Galloway with physical therapy sessions that ended with recommendations for a "home" exercise plan requiring the use of resistance bands, and that ODOC has previously provided Galloway with resistance bands.

Galloway alleges that his physical therapist recently recommended stronger resistance bands (from green to blue), a heating pad to treat his muscle spasms, and additional physical therapy sessions to treat his chronic pain. Dr. Harris acknowledged in her testimony that Galloway has not received these items. Accordingly, the Court finds that ODOC has not

substantially complied with the terms of the Settlement Agreement requiring it to provide

Galloway with physical therapy.

## III.    REPLACEMENT OF MEDICAL EQUIPMENT

In the Settlement Agreement, ODOC agreed to "replace, as needed, medically

necessary durable medical equipment in connection with this case." (Settlement Agreement at 2.)

There is no dispute that Galloway's AFO is medically necessary durable medical equipment in

connection with this case. The record reflects that ODOC delayed sending Galloway's secondary

AFO to an outside provider for a proper fitting for nearly six months, and that Dr. Harris played

a role in the delay. However, the record also reflects that Galloway was able to use his primary

AFO at all times, and that ODOC eventually repaired the secondary AFO. For these reasons, the

Court finds that ODOC is currently in substantial compliance with respect to replacing (and by

extension, repairing) Galloway's durable medical equipment.

## IV.    ONGOING MEDICAL CARE

It was clear at the evidentiary hearing that the physician-patient relationship between Dr.

Harris and Galloway has broken down, and is the likely cause of many of the delays and other

problems discussed herein. A nurse at Galloway's institution has attempted to mediate disputes

between Dr. Harris and Galloway, but was "unable to find an area of compromise acceptable to

both" of them. (*See* Supp. Decl. Nathan Wayne Galloway Supp. Pl.'s Am. Mot., Ex. 4 at 5, ECF

No. 130.) To ensure compliance with the Court's orders below and OHSU's treatment

recommendations, the Court strongly urges ODOC to reassign Galloway to a different primary

care provider within his current institution. If not, the Court will order the change as a remedial

measure if ODOC does not timely remedy its noncompliance.

Finally, the Court denies ODOC's cross-motion to terminate the Court's oversight of the

Settlement Agreement. The parties agreed that the undersigned will serve as the settlement

compliance judge to ensure compliance with the terms of the Settlement Agreement, which was a material term of the parties' agreement. ODOC's frustration with "filter[ing]" Galloway's care decisions "through the lens of the federal courts" is matched by the Court's frustration with ODOC's inability or unwillingness to comply with the terms of the Settlement Agreement. Nevertheless, the Court has little confidence that ODOC will comply with the Settlement Agreement absent the Court's involvement, and it would be especially inappropriate to terminate oversight while ODOC remains out of compliance.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART Galloway's amended motion for sanctions (ECF No. 114), DENIES ODOC's cross-motion to terminate enforcement (ECF No. 125), and ORDERS ODOC to take the following actions within sixty days to remedy the material breaches of the Settlement Agreement identified herein:

- Transport Galloway to OHSU to receive an ESI by February 28, 2025 (unless Galloway has already received his post-October 2024 quarterly ESI), as recommended in OHSU's treatment plan;

- Make "blue" resistance bands available to Galloway for his physical therapy exercises, as recommended by Galloway's physical therapist;

- Authorize Galloway to self-purchase a heating pad or hot water bottle, as recommended by Galloway's physical therapist; and

- Provide additional physical therapy sessions to Galloway, as recommended by his physical therapist.

ODOC and Galloway shall each file a status report on or before April 4, 2025, confirming that ODOC has remedied these breaches. If not, the Court will evaluate appropriate sanctions.

PAGE 16 – OPINION AND ORDER

The Court further ORDERS ODOC to comply with the following orders until Galloway releases from custody:

- Continue to prescribe and provide Galloway with Gabapentin (300mg three times per day), as recommended in OHSU's treatment plan;

- Continue to transport Galloway to OHSU to receive an ESI every ninety days, as recommended in OHSU's treatment plan;

- Continue to make exercise bands available to Galloway, as recommended by his physical therapist;

- Continue to authorize Galloway to self-purchase a heating pad or hot water bottle, as recommended by his physical therapist;

- Continue to provide physical therapy to Galloway, as recommended by his physical therapist;

- Continue to approve Galloway to self-purchase shoes every six months that will accommodate his AFO; and

- Continue to replace Galloway's primary and secondary AFOs as needed (including replacing any necessary parts).

With respect to the quarterly ESIs, those treatments lose their efficacy if not provided every ninety days. As such, litigating ODOC's noncompliance with this particular order does not provide Galloway with an adequate remedy. Accordingly, the Court provides notice that it will impose a financial or other sanction for any quarterly period within which ODOC does not transport Galloway to OHSU for his ESI, and the sanction will increase with each missed transport. Galloway shall file a notice with the Court if he misses a quarterly ESI, and the Court

PAGE 17 – OPINION AND ORDER

will follow up with defense counsel immediately to confirm Galloway's allegation. The Court will immediately impose the sanction without further litigation.

With respect to the Court's other continuing orders, consistent with the terms of the Settlement Agreement, Galloway may file a motion for enforcement of the Court's orders or the terms of the Settlement Agreement (after first attempting to resolve the dispute with ODOC or its counsel); ODOC shall have five business days to respond; and the Court will endeavor to do a better job of rendering a decision in an expedited manner.

The Court is confident that the clarity of the Court's orders and ODOC's efforts to educate its Health Services Division and Galloway's primary care provider on the Court's orders and the terms of the Settlement Agreement will eliminate the need for any further litigation until Galloway's projected release from custody in 2027.

**IT IS SO ORDERED.**

DATED this 3rd day of February, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge