IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATHAN WAYNE GALLOWAY,

                Plaintiff,

      v.

GARTH GULICK *et al.*,

                Defendants.

Case No. 2:18-cv-00923-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

On February 3, 2025, the Court ordered Defendants (referred to herein as the Oregon Department of Corrections ("ODOC")) to remedy their substantial noncompliance with an August 2021 settlement agreement (the "Settlement Agreement") with Plaintiff Nathan Wayne Galloway ("Galloway"). (ECF No. 138.) When Galloway notified the Court that ODOC had not timely remedied the noncompliance, the Court ordered ODOC to show cause why the Court should not sanction ODOC for its failure to comply with the Court's order (ECF No. 141), and ODOC responded (ECF No. 145).

Galloway filed a motion to modify the Court's February 3, 2025, order (ECF No. 139) and a motion for further sanctions (ECF No. 148). The Court resolves all pending matters herein.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

The Settlement Agreement between Galloway and ODOC provides that "[i]n the event the Parties are unable to resolve any disputes concerning this agreement, [Galloway] may present to Judge [Stacie F.] Beckerman evidence that [ODOC] is not substantially complying with the terms of this agreement." (Settlement Agreement at 3, ECF No. 50, Ex. 1.) The Settlement Agreement further provides that "[i]n the event that Judge Beckerman finds that [D]efendants have not substantially complied with the terms of the agreement, then Judge Beckerman shall have the authority to order ODOC to remedy the breach." (*Id.* at 3-4.) "In the event that defendants willfully decline to remedy any alleged breach, and [the Court] finds that no other remedies are effective[,]" the Court "shall have the authority to impose remedial or punitive sanctions on ODOC." (*Id.* at 4.)

Galloway filed his first motion to enforce the Settlement Agreement on February 9, 2023, alleging several violations. (Pl.'s Mot. Enf., ECF No. 67.) Following briefing on the motion and a hearing, the Court found in an order dated June 15, 2023, that ODOC had not substantially complied with two terms of the Settlement Agreement: (1) the requirement to replace, as needed, Galloway's medically necessary durable medical equipment and (2) the requirement to provide adequate equipment for Galloway's physical therapy. (Op. & Order at 2-3, ECF No. 85.) The Court also found that ODOC had made a good faith effort to implement the chronic pain management plan developed for Galloway by Oregon Health and Science University ("OHSU"), as required by the Settlement Agreement, but ODOC's efforts were frustrated in part by Galloway's unwillingness to take medication as prescribed. (*Id.* at 3-5.) The Court urged the parties to work together collaboratively to implement OHSU's chronic pain management plan. (*Id.* at 5.) Finally, the Court found that ODOC had substantially complied with the Settlement

Agreement's behavioral health term by referring Galloway to Behavioral Health Services for evaluation and treatment. (*Id.*) The Court denied Galloway's request for compensatory damages and attorney's fees, and for the appointment of an independent monitor. (*Id.* at 5-6.)

In its order, and consistent with the terms of the Settlement Agreement, the Court ordered ODOC to take the following actions within sixty days to remedy the breaches:

(1)    order two Velcro straps designed for Galloway's [ankle foot orthotic ("AFO")];

(2)    approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO;

(3)    arrange for the repair and maintenance of Galloway's primary AFO;

(4)    provide a second AFO for Galloway to use when his primary AFO is serviced; and

(5)    make resistance bands available to Galloway in a manner consistent with the correctional environment.

(*Id.* at 6.) The Court ordered ODOC to file a status report by August 14, 2023, confirming ODOC's compliance with the Court's order. (*Id.*)

On August 14, 2023, ODOC filed its status report. (Defs.' Memo, ECF No. 86.) With respect to the Court's order regarding Galloway's AFO, ODOC reported that it had not complied with the Court's order, and instead referred Galloway to Summit Orthotics ("Summit") to provide advice on determining the medical necessity of Galloway's existing AFO. (*Id.* at 2.) Following Galloway's visit, Summit recommended a softer dynamic AFO, which ODOC approved for purchase. (*Id.*) In the interim, ODOC asserted that it had provided replacement straps for Galloway's current AFO and performed repair and maintenance on it. (*Id.* at 2-3.) ODOC did not authorize the purchase of orthotic shoes, based on its conclusion that Galloway's

current shoes would work with a dynamic AFO. (*Id.* at 3.) With respect to Galloway's physical therapy equipment, ODOC reported that it had timely ordered resistance bands, but they were back ordered, and ODOC had requested bands from another source. (*Id.*)

Also on August 14, 2023, Galloway filed a Notice of Defendants' Willful Noncompliance with Settlement Agreement and Motion for Sanctions, reporting largely the same developments regarding ODOC's failure to comply with the Court's order:

- ODOC avoided the Court's orders by ordering Galloway a dynamic AFO instead of accommodating his existing AFO.

- Galloway met with Dr. Karen Harris, DO ("Dr. Harris"), on July 12, 2023, and Dr. Harris advised Galloway he would receive only one Velcro strap because his current Velcro strap was working fine.

- Summit repaired his primary AFO and provided one Velcro strap.

- At the time of filing, Galloway had not received the resistance bands.

(Pl.'s Mot. Sanctions at 2-8, ECF No. 87.) Galloway requested that the Court order the remedial and punitive sanctions outlined in his original motion to enforce the settlement agreement. (*Id.* at 14.) In the original motion, Galloway requested $552,000 in compensatory damages (four times the original Settlement Agreement award of $138,000) and reimbursement of the $55,200 portion of the settlement award that was allocated to Galloway's prior counsel. (Pl.'s Mot. Enf. at 8.)

In the reply to his motion for sanctions, Galloway informed the Court that ODOC's Therapeutic Level of Care ("TLC") Committee determined in October 2023 that Galloway may keep his primary AFO (instead of switching to the dynamic AFO), and that he had returned again

to Summit and received a second AFO to use as a backup to his primary AFO. (Pl.'s Reply at 3-4, ECF No. 101.) Galloway still had not received the second Velcro strap. (*Id.* at 4.)

The Court held a hearing on Galloway's motion for sanctions on November 21, 2023. (ECF No. 102.) At the hearing, Galloway and ODOC's counsel confirmed that Galloway had not yet received the second Velcro strap for his AFO and ODOC had not yet authorized Galloway to self-purchase shoes that will accommodate his primary AFO. Galloway also confirmed that he had since received the second AFO, albeit an inexpensive version not custom designed like his primary AFO, and that his primary AFO had one proper Velcro strap and was in full operational order. Galloway also confirmed that he finally received the resistance bands sixty-one days after the Court's order. ODOC's counsel confirmed that the TLC Committee had approved Galloway to visit OHSU for an epidural steroid injection ("ESI"), which was part of OHSU's chronic pain management plan.

With respect to ODOC's failure to authorize Galloway to self-purchase shoes to accommodate his AFO, as the Court had ordered and then provided ODOC sixty days to comply, ODOC's counsel explained that the initial delay appeared to be the result of ODOC's request that Summit evaluate Galloway for a dynamic AFO that does not require special shoes, followed by a nurse's unsuccessful attempt to enter the authorization into the system, followed by a disconnect between ODOC's medical and security units regarding the authorization. During the hearing, ODOC's counsel was able to contact a nurse to confirm that Galloway was authorized to self-purchase orthotic shoes.

Galloway filed a supplement on December 7, 2023, informing the Court that he still had not received the second Velcro strap as of December 4, 2023, but that ODOC officials informed him that he is now authorized to self-purchase orthotic shoes (albeit only for one year). (Pl.'s

PAGE 5 – OPINION AND ORDER

Supp. at 2, ECF No. 103.) Galloway filed a corrected supplement correcting the calculations in the original supplement. (Pl.'s Corr. Supp. at 1, ECF No. 104.) Galloway reported continued dissatisfaction with his secondary (non-custom) AFO, especially because it requires the use of a cane and a nurse had removed Galloway's authorization to use a cane as medically unnecessary. (*Id.* at 3.) Galloway also continued to object to ODOC's medication crush order, arguing that there is no basis for the order. (*Id.* at 3-4.) In his corrected supplement, Galloway requested sanctions in the amount of $147,195, representing the documented cost of medical care ODOC had failed to provide Galloway since entering into the Settlement Agreement ($91,995) and the amount of attorney's fees paid to Galloway's prior counsel ($55,200). (*Id.* at 4-5.) Galloway also requested liquidated damages for any future non-compliance, beginning with the doubling of the damages award with each act of non-compliance until Galloway releases from ODOC custody in 2027. (*Id.* at 5.)

In a December 18, 2023 opinion, the Court found that ODOC did not timely remedy the material breaches of the Settlement Agreement identified in the Court's June 15, 2023, order. (Op. & Order at 7, ECF No. 105.) Specifically, Defendants failed to order two Velcro straps for Galloway's AFO and did not timely approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO. (*Id.* at 7-8.) The Court imposed remedial and punitive sanctions in the amount of $5,000, payable to Galloway. (*Id.* at 10.)

To provide guidance to the parties moving forward, the Court noted that ODOC had satisfied many terms of the Settlement Agreement, but that two terms are continuing obligations while Galloway remains in ODOC custody: (1) "ODOC will implement all medically reasonable recommendations received by outside experts that are based on evidence-based clinical data, current professional knowledge and experience" in connection with the medical conditions at

issue in the Settlement Agreement; and (2) ODOC "will replace, as needed, medically necessary durable medical equipment in connection with this case." (Settlement Agreement at 2.)

The Court instructed that it expects that ODOC will continue to provide Galloway with routine maintenance and repair of his primary custom AFO; a secondary AFO for Galloway to use while his primary AFO is serviced; two Velcro straps designed for Galloway's AFO; approval to self-purchase orthotic shoes at least every six months that will accommodate his AFO; and resistance bands. The Court advised that if Galloway believes that ODOC is not substantially complying with these terms, he must first attempt to resolve any disputes informally with ODOC medical personnel, and he may file a motion for enforcement if unable to resolve the dispute. (*Id.* at 3.)

With respect to ODOC's compliance with OHSU's chronic pain treatment plan for Galloway, the Court noted that it was unwilling to interfere with ODOC's execution of OHSU's chronic pain management recommendations, to the extent Galloway has challenged ODOC's position that Galloway's Gabapentin must be crushed and titrated and ODOC's sequencing of the treatment plan. The Court encouraged Galloway to follow ODOC's medical guidance with respect to dosage, titration, and sequencing, even if he disagrees with the efficacy of the advice, so that he may receive the benefits of the OHSU recommendations to treat his chronic pain.

Galloway again filed a motion for sanctions for noncompliance with the Settlement Agreement on May 17, 2024 (ECF No. 107), and amended his motion on July 22, 2024. In his July 22, 2024, amended motion for further sanctions, Galloway alleged that Defendants' willful noncompliance with the Settlement Agreement continued. (Pl.'s Mot. Sanctions at 1.) Specifically, Plaintiff alleged that: (i) ODOC's in-house orthotics clinic took possession of Galloway's AFO to have it fitted by an outside provider, but Dr. Harris ordered that the clinic

return the AFO to Galloway, and Dr. Harris told Galloway that she would not take the issue of his AFO fit to the TLC Committee because it was a "petty issue" and that he should cut the toe box out of his shoes to make the AFO fit better and lift his foot higher so that he does not trip; (ii) Dr. Harris questioned the medical necessity of Galloway's AFO and also opined that Galloway's request for a cane would "encourag[e] Mr. Galloway to view and project himself as crippled by a physical disability"; (iii) Dr. Harris interfered with Galloway's scheduled ESI at OHSU by scheduling him for a consultation instead of treatment, despite counsel's representation at the December 2023 hearing that the TLC Committee had already approved Galloway to visit OHSU to receive the ESI, and Dr. Harris then deferred his ESI again in April 2024, citing the ongoing disagreement about crushing Galloway's Gabapentin; and (iv) OHSU records reflect that OHSU made several attempts to return Galloway to OHSU for continued treatment but ODOC did not return its calls. (*Id.* at 2-8.)

Galloway also reported that at his OHSU consultation on April 15, 2024, the OHSU physicians outlined an updated detailed treatment plan, including: (i) Gabapentin 300mg three times per day; (ii) Tramadol 50mg daily; (iii) weekly acupuncture; (iv) lumbar magnetic resonance imaging ("MRI") within one month due to urinary retention, motor weakness, and gait change; (v) an ESI every three months; and (vi) a visit to OHSU neurosurgery urgently because of new neurologic deficits. (*Id.* at 8.) At the time of Galloway's July 22, 2024, motion, he had not received any of the recommended medical care. (*Id.*) Instead, Galloway alleged that Dr. Harris advised him that it was too expensive for ODOC to transport him to OHSU for treatment, he has learned to live with his pain and therefore ESIs are no longer medically necessary, and she was not going to have OHSU "dictate to her" how to treat Galloway's chronic pain. (*Id.* at 9-10.) Galloway also alleged that Dr. Harris refused to order any medication for him, concluded that

acupuncture is not "medically indicated," and told him he can wait until his release from custody (i.e., in 2027) to receive treatment. (*Id.* at 10.) Dr. Harris also denied the recommended MRI. (*Id.*) In his motion, Galloway asked the Court to order ODOC to implement OHSU's latest treatment recommendations, and impose meaningful sanctions to deter further violations of the Settlement Agreement. (*Id.* at 9, 13.)

In ODOC's September 5, 2024, response to Galloway's amended motion for sanctions, ODOC reported that the in-house orthotics clinic sent Galloway's AFO to Summit for proper fitting on June 20, 2024, Galloway was never without the use of his primary AFO as he awaited the proper fitting of his secondary AFO, and the AFO issue had resolved. (Defs.' Resp. & Mot. Terminate at 4, ECF No. 125.) With respect to pain management, ODOC acknowledged that OHSU recommended ESIs every three months, but emphasized that OHSU's references to pain medications are recommendations only for Galloway's primary care provider to consider. (*Id.* at 6.) Dr. Harris, in turn, believes that Tramadol is not indicated for chronic pain and presents greater potential for harm in light of the risks of addiction and dependence, but she was willing to prescribe Gabapentin for Galloway as recommended in light of new ODOC policies. (*Id.* at 8.) ODOC further reported that the TLC Committee had approved the recommended MRI and neurosurgical consult on May 30, 2024, but denied acupuncture as not medically indicated. (*Id.*) The MRI was completed on August 15, 2024. (*Id.* at 9.)

In its response and cross-motion, ODOC asked the Court to terminate oversight over the Settlement Agreement, because "[i]t is less than ideal to have Plaintiff's care decisions filtered through the lens of the federal courts" and terminating oversight "will not impair [Galloway's] ability to seek further redress if he believes his future care falls below the Eighth Amendment standard." (*Id.* at 10.)

Galloway filed a reply in support of his motion on October 2, 2024. (Pl.'s Reply at 1-9, ECF No. 131.) Galloway further reported that his physical therapist had recommended a higher level of resistance bands (from green to blue), a heating pad, and additional sessions, but Dr. Harris did not follow through with any of the recommendations. (*Id.* at 6.)

Galloway filed a supplemental update on October 15, 2024, reporting that ODOC finally sent him to OHSU to receive an ESI on October 7, 2024. (Pl.'s Supp. Update at 1, ECF No. 133.) He also visited OHSU on October 8, 2024, for a neurosurgical consult, but ODOC failed to send along Galloway's most recent MRI to allow the surgeon to provide the requested consultation. (*Id.* at 1.) Galloway reported that the neurosurgeon expressed frustration that ODOC asked for a consultation but had not implemented his recommendations nor the pain clinic's recommendations from prior visits. (*Id.*) The neurosurgeon emphasized that Gabapentin is the appropriate medication to treat Galloway's damaged nerves. (*Id.* at 2.)

The Court held an evidentiary hearing by video on December 17, 2024, at which Dr. Harris appeared and testified. (ECF No. 137.) Dr. Harris answered questions from ODOC's counsel and Galloway. Of particular note, Dr. Harris (i) testified that the TLC Committee approved Galloway for further ESIs but it took four months to schedule the first visit which is "standard" at ODOC because it considers pain management to be "elective" treatment; (ii) questioned OHSU's recommendations for Galloway because they came from a medical resident who was a "trainee" and "probably quite sleep deprived" and Dr. Harris believed the OHSU resident was "a little bit out of line"; (iii) questioned OHSU's recommendations because the providers there do not "know Mr. Galloway"; (iv) agreed to prescribe Gabapentin to Galloway in the manner OHSU recommended, in part because it is "not worth the time and the effort and the

investment of public servants' time" to address Galloway's concerns about his Gabapentin; (v) questioned Galloway's reports of incontinence because she has never witnessed it; (vi) opined that Galloway's foot drop was partly psychogenic; (vii) complained that "public servants should not be spending this much time on" things like Galloway's AFO, the "time and energy that's gone into" his AFO is "mind boggling," and the timeline of fixing Galloway's AFO is "exhausting"; (ix) stated she would like to resolve whether Galloway's physical therapy exercise bands qualify as durable medical equipment, for which she is responsible for writing orders, so that she does not "have to deal with this again"; (x) acknowledged that she had denied or would deny the physical therapist's heating pad recommendation because a heating pad is a comfort measure (despite the physical therapist's recommendation that heat might reduce Galloway's muscle spasms), not a medical need, and her job is to meet medical needs and not comfort needs; (xi) testified she has never approved a heating pad for any adult in custody ("AIC") and would need to figure out how to do it; (xii) believes there is nothing a heating pad can do that rest will not do, and sometimes patients use heating pads too often; (xiii) testified that she likes Galloway "just fine" but is frustrated about the amount of time she is asked to spend on his care; (xiv) stated she recalls reading the Settlement Agreement once but does not recall its terms; and (xv) testified that ODOC cannot timely transport AICs to outside medical visits because it is "underfunded" and "understaffed" and there are not "enough people to get people out for trips and to schedule them and organize them" and it is "a big problem" that ODOC does not "have a good mission" to address.

Following the evidentiary hearing, Galloway sent the Court a supplemental request on or about January 14, 2025, copying ODOC's counsel, which the Court received on January 30, 2025. In his supplemental request, Galloway noted that because he received his last ESI in

October 2024, he must receive the next ESI by the end of February 2025 to stay on track with

OHSU's treatment plan recommending quarterly treatments.

In a February 3, 2025 opinion and order (ECF No. 138), the Court found that ODOC had

not substantially complied with the terms of the Settlement Agreement. The Court reviewed the

terms of the Settlement Agreement:

> The Settlement Agreement provided that ODOC "will implement all medically
> reasonable recommendations received by outside experts that are based on
> evidence-based clinical data, current professional knowledge and experience."
> (Settlement Agreement at 2.) The Settlement Agreement defines "medically
> reasonable recommendations" as "recommendations that a competent doctor
> could make that are safe and effective, not experimental or investigational, and
> appropriate in duration and frequency in accordance with the accepted standards
> of medical practice for the diagnosis or treatment of the patient's condition." (*Id.*
> at 3.) The Settlement Agreement further provided that "ODOC will not commit to
> implementing any non-medical recommendations, or recommendations that
> would impede ODOC's operational or population management abilities." (*Id.*)

(Op. & Order at 12.) The Court also reviewed OHSU's most recent chronic pain treatment plan:

Gabapentin 300mg three times per day; Tramadol 50mg daily; weekly acupuncture; a lumbar

MRI within one month due to urinary retention, motor weakness, and gait change; an ESI every

three months; and visit OHSU neurosurgery urgently because of new neurologic deficits. (*Id.* at

12-13.) The Court noted that ODOC had agreed that Galloway may receive 300mg of

Gabapentin three times per day in light of recent changes to ODOC's Gabapentin policy, and the

Court found that ODOC eventually provided Galloway with a lumbar MRI (albeit not within the

time frame OHSU recommended), and eventually (albeit not urgently) provided Galloway with a

neurosurgical consult. (*Id.* at 13.) The Court accepted ODOC's representation that it was unable

to provide Galloway with weekly acupuncture treatments in a correctional setting, and ODOC's

position that providing Galloway with Tramadol, an opiate, presented too high of a risk for

addiction and dependence. (*Id.*)

The Court found that with respect to quarterly ESIs, it is undisputed that OHSU has recommended regular ESIs to treat Galloway's chronic pain several times, including in its most recent April 2024 treatment plan. (*Id.*) The record reflects that Galloway received an ESI in March 2022, and again in October 2024, and that ESIs have provided him with pain relief. (*Id.*) The Court noted that it was satisfied that quarterly ESIs are a medically reasonable recommendation from an outside provider based on evidence-based clinical data and current professional knowledge and experience, and that transporting Galloway to OHSU for quarterly ESIs—although inconvenient and perhaps costly—does not impede ODOC's operational or population management abilities. (*Id.* at 13-14.) Although the TLC Committee had already approved ESI treatments for Galloway, ODOC has only transported Galloway to OHSU for an ESI one time in over a year. (*Id.* at 14.) For all of these reasons, the Court found that ODOC had not substantially complied with the Settlement Agreement terms because it had failed to provide Galloway with quarterly ESI treatments at OHSU. (*Id.*) The Court also found that ODOC had not substantially complied with the terms of the Settlement Agreement by failing to provide Galloway with blue resistance bands. (*Id.* at 14-15.)

Based on its findings, the Court ordered ODOC to take the following actions within sixty days to remedy its material breaches of the Settlement Agreement:

- Transport Galloway to OHSU to receive an ESI by February 28, 2025 . . . as recommended in OHSU's treatment plan;

- Make "blue" resistance bands available to Galloway for his physical therapy exercises, as recommended by Galloway's physical therapist;

- Authorize Galloway to self-purchase a heating pad or hot water bottle, as recommended by Galloway's physical therapist; and

PAGE 13 – OPINION AND ORDER

- Provide additional physical therapy sessions to Galloway, as recommended by his physical therapist.

(*Id.* at 16.) The Court ordered ODOC and Galloway to file a status report on or before April 4, 2025, confirming that ODOC had remedied these breaches, or the Court would evaluate appropriate sanctions. (*Id.*) The Court further ordered ODOC to comply with the following orders until Galloway releases from custody: (i) continue to prescribe and provide Galloway with Gabapentin (300mg three times per day), as recommended in OHSU's treatment plan; (2) continue to transport Galloway to OHSU to receive an ESI every ninety days, as recommended in OHSU's treatment plan; (3) continue to make exercise bands available to Galloway, as recommended by his physical therapist; (4) continue to authorize Galloway to self-purchase a heating pad or hot water bottle, as recommended by his physical therapist; (5) continue to provide physical therapy to Galloway, as recommended by his physical therapist; (6) continue to approve Galloway to self-purchase shoes every six months that will accommodate his AFO; and (7) continue to replace Galloway's primary and secondary AFOs as needed (including replacing any necessary parts). (*Id.* at 17.)

The Court also found that "[w]ith respect to the quarterly ESIs, those treatments lose their efficacy if not provided every ninety days" and "[a]s such, litigating ODOC's noncompliance with this particular order does not provide Galloway with an adequate remedy." (*Id.*) Accordingly, the Court "provides notice that it will impose a financial or other sanction for any quarterly period within which ODOC does not transport Galloway to OHSU for his ESI, and the sanction will increase with each missed transport." (*Id.* at 17-18.) The Court ordered Galloway to file a notice with the Court if he misses a quarterly ESI, and the Court will follow up with defense counsel immediately to confirm Galloway's allegation. (*Id.* at 18.)

On February 25, 2025, Galloway filed a motion to modify the Court's February 3, 2025, opinion. (Pl.'s Mot. Modify, ECF No. 139.) Galloway submitted "new evidence" in an effort to question the credibility of Dr. Harris, and asked the Court to reconsider its order with respect to sanctions. (*Id.* at 1-6.) Specifically, Galloway proffered evidence that Dr. Harris had engaged in purposeful misconduct, and asked the Court to make a factual finding that Dr. Harris is not credible and reconsider ordering sanctions for ODOC's failure to remedy continuing breaches of the Settlement Agreement. (*Id.*) Galloway asked the Court to sanction ODOC in the amount of medical care ODOC has failed to provide him ($91,000) or in the amount of his attorney's fees ($55,200). (*Id.* at 5-6.) In its response, ODOC submitted evidence to rebut Galloway's allegations about Dr. Harris.[1] (Defs.' Resp. Pl.'s Mot. Modify at 4-5; *see also* Decl. of Katherine Ross, ECF No. 147.)

On March 5, 2025, Galloway filed a notice informing the Court that ODOC failed to transport him to OHSU by the Court-ordered deadline of February 28, 2025. (Pl.'s Not. Defs.' Failure Comply Court's Op. & Order, ECF No. 140.) In response, the Court issued an Order to Show Cause on March 5, 2025, requiring ODOC to "show cause in writing by March 19, 2025, why the Court should not sanction Defendants for failing to comply with its February 3, 2025, order to '[t]ransport Galloway to OHSU to receive an ESI by February 28, 2025[.]'"[2] (ECF No. 141.)

///

---

[1] ODOC's response to the motion was untimely because its counsel was on medical leave due to an extended illness. (Defs.' Resp. Pl.'s Mot. Modify at 1, ECF No. 14.)

[2] On March 17, 2025, Galloway filed a letter requesting clarification of the Court's Order to Show Cause, questioning why the Court was allowing ODOC to provide an explanation for its failure to comply with the Court's order and why it was allowing ODOC fourteen days to respond. (ECF No. 144.)

On March 19, 2025, ODOC responded to the Order to Show Cause. (Defs.' Resp. Order Show Cause, ECF No. 145.) ODOC acknowledged that it did not transport Galloway to OHSU by the Court's February 28, 2025 deadline. (*Id.* at 2.) ODOC explained that "the urgency of the scheduling was either not made clear to the schedulers, or the schedulers failed to appreciate the urgency of the order." (*Id.*) ODOC represented that the delay was "not a result of any malice or indifference towards plaintiff, but rather a poorly timed mistake." (*Id.*; *see also id.* at 4, "While ODOC failed to schedule the ESI injection appointment consistent with the Court's expectations, the shortcoming was not intentional or a result of malice or contempt, but an unfortunately timed mistake.") ODOC represented that Galloway was scheduled to visit OHSU in March, but "ODOC was informed by OHSU that they require a follow up appointment prior to starting up ESI injections again[.]"[3] (*Id.*) ODOC reported that it is in the process of overhauling and improving many aspects of its care delivery to AICs, including its scheduling and transporting of AICs to outside medical appointments. (*Id.* at 3.)

On April 4, 2025, Galloway filed a notice informing the Court that although ODOC transported him to OHSU on March 20, 2025, the purpose of the visit was for another ESI evaluation, not an injection. (Pl.'s Not. Defs.' Missed Quarterly Period ESI & Mot. Sanctions, ECF No. 148.) However, when he arrived, OHSU terminated the visit because no further ESI evaluation was necessary. (*Id.* at 3.) Accordingly, Galloway argued that ODOC breached the Settlement Agreement again by failing to transport him to another quarterly ESI treatment, and requested sanctions in the amount of $45,500 (an estimate of the value of two quarters of medical treatment) and remedial sanctions in the amount of $15,000. (*Id.*) In total, Galloway

---

[3] ODOC also reported that it had transferred Galloway's care to a new provider, and therefore Dr. Harris is no longer Galloway's primary care provider. (*Id.*)

requested: $91,000 in lost quarterly treatments and $10,000 in remedial damages for 2024;

$22,750 in lost quarterly treatments and $15,000 in remedial damages for the missed February

28, 2025, deadline; and $22,750 in lost quarterly treatments and $20,000 in remedial damages for

the March 31, 2025, deadline, for a total financial sanction of $181,500. (*Id.* at 4.)

Both Galloway and ODOC filed status reports on or about April 4, 2025, providing the

Court with updates as summarized below:

|  | **ODOC** | **Galloway** |
|---|---|---|
| ESI treatments | Consultation took place at OHSU on 3/20/25; Galloway is scheduled for an ESI "in early May"; quarterly ESIs will occur thereafter | Confirmed same timeline |
| Resistance bands | Blue resistance bands were made available to Galloway | Confirmed, and noted he has requested one light resistance band |
| Heating pad | ODOC ordered and delivered a heating pad to Galloway on March 21, 2025 | Confirmed, but requests the ability to self-purchase |
| Physical therapy | Galloway received physical therapy on March 21, 2025 | Confirmed |
| Gabapentin | Galloway's primary care provider prescribed Gabapentin at a dosage of 800 mg three times a day | Confirmed, but continues to request Tramadol or Baclofen |
| Shoes | "ODOC has confirmed that Plaintiff still has a package authorization for shoes in the DOC 400 program." | Reports he is unable to receive the package authorization form unless ODOC renews the order in the AS400. Further reports that "[a]s of the filing of this Status Report, Plaintiff is unable to receive shoes built to accept his AFO." |
| AFO | Galloway had an appointment with an outside clinic on April 2, 2025, and the clinic repaired his primary AFO | Confirmed visit but noted the outside provider is awaiting authorization to build and deliver the updated AFO |

(Defs.' Status Report, ECF No. 149; Pl.'s Apr. 4, 2025, Status Report, ECF No. 151.)

## DISCUSSION

The Settlement Agreement established a two-step procedure to resolve any allegations that ODOC is not substantially complying with the agreement's terms. (Settlement Agreement at 3.) First, if the undersigned finds that ODOC has not substantially complied with the terms of the Agreement, "Judge Beckerman shall have the authority to order ODOC to remedy the breach." (*Id.* at 3-4.) Second, "[i]n the event that defendants willfully decline to remedy any alleged breach, and [the Court] finds that no other remedies are effective[,]" the Court "shall have the authority to impose remedial or punitive sanctions on ODOC." (*Id.* at 4.) Thus, the Agreement requires the Court to allow ODOC an opportunity to remedy a breach before the Court imposes remedial or punitive sanctions, and sanctions are appropriate only in the event ODOC willfully declines to remedy a breach.

Pursuant to the terms of the Settlement Agreement, the Court found in an order dated June 15, 2023, that ODOC had not substantially complied with two terms of the Settlement Agreement: (1) the requirement to replace, as needed, Galloway's medically necessary durable medical equipment and (2) the requirement to provide adequate equipment for Galloway's physical therapy. (Op. & Order at 2-3, ECF No. 85.) At that time, the Court also found that ODOC had made a good faith effort to implement OHSU's chronic pain management plan but ODOC's efforts were frustrated in part by Galloway's unwillingness to take medication as prescribed. (*Id.* at 3-5.) The Court ordered ODOC to take several actions within sixty days to remedy the breaches, including ordering Velcro straps for Galloway's AFO, approving Galloway to self-purchase shoes to accommodate his AFO, arranging for the repair and maintenance of Galloway's primary AFO, providing a second AFO for Galloway to use when his primary AFO

is serviced, and making resistance bands available to Galloway in a manner consistent with the correctional environment. (*Id.* at 6.)

Following a hearing, the Court found in its December 18, 2023 opinion and order that ODOC did not timely remedy the breaches of the Settlement Agreement identified in the Court's June 15, 2023, order. (Op. & Order at 7, ECF No. 105.) Specifically, Defendants failed to order two Velcro straps for Galloway's AFO and did not timely approve Galloway to self-purchase shoes at least every six months that will accommodate his AFO. (*Id.* at 7-8.) As a result, the Court imposed a sanction in the amount of $5,000. (*Id.* at 10.) The $5,000 sanction addressed ODOC's breaches and failures to remedy, and ODOC then returned to substantial compliance with respect to Galloway's AFO and physical therapy equipment.

Galloway again filed a motion for sanctions for noncompliance with the Settlement Agreement on May 17, 2024 (ECF No. 107), and amended his motion on July 22, 2024 (ECF No. 114). In his July 22, 2024, amended motion for further sanctions, Galloway alleged that Defendants' willful noncompliance with the Settlement Agreement continued. (Pl.'s Mot. Sanctions at 1.) After briefing concluded, the Court held an evidentiary hearing on December 17, 2024, as summarized above.

In a February 3, 2025 opinion and order, the Court found that ODOC had not substantially complied with the terms of the Settlement Agreement by failing to provide Galloway with quarterly ESI treatments at OHSU and failing to provide him with resistance bands for his physical therapy. (Op. & Order, ECF No. 138.) As the Agreement requires, the Court provided ODOC with an opportunity to remedy the breaches. Specifically, the Court ordered ODOC to take the following actions within sixty days to remedy its breaches of the Settlement Agreement: (1) transport Galloway to OHSU to receive an ESI by February 28, 2025

as recommended in OHSU's treatment plan; (2) make "blue" resistance bands available to Galloway for his physical therapy exercises, as recommended by Galloway's physical therapist; (3) authorize Galloway to self-purchase a heating pad or hot water bottle, as recommended by Galloway's physical therapist; and (4) provide additional physical therapy sessions to Galloway, as recommended by his physical therapist. (*Id.* at 16.)

Based on the evidence the parties submitted, it is undisputed that ODOC failed to comply with the Court's order to transport Galloway to OHSU to receive an ESI by February 28, 2025. Accordingly, the Court finds that ODOC failed substantially to comply with the Agreement's requirement that ODOC implement all medically reasonable recommendations received by outside experts that are based on evidence-based clinical data, current professional knowledge and experience in connection with the medical conditions at issue in the Settlement Agreement, and that ODOC willfully declined to remedy the breach. Notably, Galloway had earlier reminded ODOC of the urgency of scheduling the next ESI treatment by the end of February, even prior to the Court's order requiring ODOC to do so. The record reflects that ODOC failed to schedule the appointment because of communication failures and a lack of urgency, not because OHSU was unable to accommodate the appointment.

Furthermore, ODOC remained in material breach of the Settlement Agreement with respect to Galloway's ESI treatments throughout March, April, and into May 2025. Galloway did visit OHSU on March 20, 2025, but that visit was a consultation rather than an ESI treatment. The only information before the Court is that OHSU informed ODOC that it required another consultation prior to restarting ESIs and therefore that failure does not necessarily appear to be the fault of ODOC, but ODOC nevertheless delayed in rescheduling another ESI and remains in noncompliance. As a result, Galloway did not receive an ESI between October 7, 2024 and

today's date.[4] For its substantial noncompliance with the Settlement Agreement and failure to remedy the noncompliance, the Court imposes a remedial sanction of $7,500 for each missed quarterly ESI since October 2024, for a total sanction of $15,000. The sanction will increase with each missed quarterly ESI, and the clock for the next quarterly transport will begin once Galloway receives his next ESI.

The Court denies Galloway's motion to modify its February 3, 2025, opinion. (ECF No. 139.) With respect to Galloway's proffered evidence about Dr. Harris, the Court had already evaluated Dr. Harris' "credibility" when finding ODOC in substantial noncompliance in its February 3, 2025, opinion. To the extent Galloway believes that Dr. Harris provided him with constitutionally inadequate medical care, that is a new claim that Galloway may file after exhausting his administrative remedies. The Settlement Agreement does not preclude him from pursuing legal claims that post-date the agreement.

The Court further finds that ODOC remedied its substantial noncompliance with respect to providing Galloway with resistance bands, because it is undisputed that ODOC provided Galloway with the "blue" resistance bands that his physical therapist recommended. Accordingly, ODOC remedied its breach with respect to Galloway's physical therapy and remedial sanctions are neither necessary nor appropriate.

With respect to Galloway's allegation in his April 4, 2025, status report that ODOC purchased him a heating pad instead of allowing him to self purchase the heating pad, the Court finds that ODOC substantially complied with the Agreement and the Court's order by purchasing the heating pad for Galloway.

---

[4] ODOC's counsel informed the Court on May 19, 2025, that OHSU rescheduled Galloway's ESI scheduled for early May 2025 as a result of staffing issues, but that the appointment will take place soon (on a date the Court is not authorized to disclose).

PAGE 21 – OPINION AND ORDER

With respect to Galloway's allegation in his April 4, 2025, status report that ODOC is out of compliance with the Settlement Agreement by failing to renew the shoe package authorization in the AS400 such that Galloway remains unable to self purchase shoes to accommodate his AFO, ODOC was aware as a result of its prior noncompliance that authorizing Galloway to self purchase shoes requires both medical and security authorizations. It appears that Galloway's medical authorization was renewed, but not the security authorization. The Court finds that ODOC is not in substantial compliance with the requirement to authorize Galloway to self purchase shoes to accommodate his AFO, and therefore orders ODOC to remedy its substantial noncompliance within sixty days.

## CONCLUSION

For the reasons stated, the Court DENIES Galloway's motion to modify the Court's prior opinion (ECF No. 139) and GRANTS IN PART Galloway's motion for sanctions (ECF No. 148). The Court ORDERS ODOC to (i) pay a sanction in the amount of $15,000 to Galloway within sixty days; (ii) remedy its substantial noncompliance with respect to approving Galloway to self-purchase shoes to accommodate his AFO by ensuring the approval is documented in the AS400 (or other offender management system, as appropriate) within sixty days; and (iii) transport Galloway to OHSU for another quarterly ESI within three months of his next ESI.

**IT IS SO ORDERED.**

DATED this 19th day of May, 2025.

_Stacie F. Beckerman_

HON. STACIE F. BECKERMAN
United States Magistrate Judge